(807 P.2d 1319)

No. 65,159

DODSON AVIATION, INC., A Kansas Corporation, *et al., Appellants,* v. ROLLINS, BURDICK, HUNTER OF KANSAS, INC., A Kansas Corporation, *et al., Appellees.*

Opinion filed March 15, 1991.

*Richard W. Byrum* and *Keven M.P. O'Grady*, of Ferree, Bunn & Byrum, Chartered, of Overland Park, for appellants.

*Richard O. Skoog*, of Ottawa, and *R. Douglas Noah, Jr.*, of Gardere & Wynne, of Dallas, Texas, for appellees.

Before RULON, P.J., BRAZIL, J., and M. KAY ROYSE, District Judge, assigned.

BRAZIL, J.: In an action for breach of an insurance contract, plaintiffs Dodson Aviation, Inc., Dodson Investments, Inc., and Dodson International Parts, Inc., (Dodson) appeal decisions of the district court granting defendants Underwriters' motion in limine, overruling Dodson's objections to certain jury instructions, and denying its motion for a new trial.

Dodson was the owner of a Cessna 441 Conquest aircraft which was damaged in a hailstorm. The aircraft was insured by a hull insurance policy of which the defendants (Underwriters) were the individual underwriters. Hull insurance is defined as: "Marine or aviation insurance covering loss to vessel or plane or its machinery or equipment." Black's Law Dictionary 804 (6th ed. 1990).

Following the initial inspection of the plane by Joseph Kieszkowski, Jr., an insurance adjuster for Underwriters, Dodson obtained two estimates of repair and submitted them to Underwriters. Yingling Aircraft, Inc., estimated the repair at $89,112.45, and Kansas City Aviation Center estimated the repair at $151,000.

Allegedly acting upon a settlement offer from Underwriters, Dodson flew the plane to Goodner Brothers Aircraft, Inc., in

Arkansas for what was described as a bottom-of-the-line repair in the amount of $10,000.

Kieszkowski believed the Yingling estimate to be too high and some of the work indicated in it to be excessive. For this reason, he made arrangements with Dodson to bring Warren H. Hartquist, an employee of Van Dusen Aviation Services, to Dodson to inspect the plane and render an estimate of repair. Although Goodner had not yet completed its repairs, the plane was returned to Dodson for Hartquist's inspection. Hartquist estimated repairs at $17,770. The insurance policy contained a deductible of $25,000.

No settlement was ever arranged between the parties, so Dodson filed an action claiming breach of the insurance contract. Underwriters answered that the damage to the airplane was less than the deductible amount and that the policy was void due to misrepresentations, false swearing, and attempted fraud by Dodson.

Prior to trial, Underwriters filed a request for interpretation of the contract of insurance as it related to the measure of damages. The court issued a letter opinion in which it held that the measure of damages in this case would be the cost of repair and found certain other factors, including loss of value, which Dodson urged as the measure of damages, were not relevant. Underwriters also submitted a motion in limine seeking to exclude any testimony at trial concerning the fair market value of the airplane as irrelevant and, pursuant to K.S.A. 60-452, to also exclude any testimony concerning settlement negotiations. The motion was granted.

At trial, the jury found the cost of repair was $10,000 and that Dodson had concealed or misrepresented some material fact or circumstance or engaged in some false swearing concerning its claim for hail damage.

On appeal, Dodson argues that the trial court erred by (1) excluding all evidence concerning loss of value of the aircraft, (2) excluding testimony of Dodson showing that it believed a settlement had been reached, and (3) instructing the jury the insurance policy would be void if the insured concealed or misrepresented material facts. We reverse and remand for a new trial.

The trial court made two rulings which Dodson now disputes. Prior to trial, after examining the terms of the insurance contract, the court held that the measure of damages to the aircraft would be the cost of repairs and "no other factors, such as depreciation of value, deterioration, loss of use *or reduction in fair market value*, are relevant to the issue of damages in this case." (Emphasis added.) Then, at trial, the court granted Underwriters' motion in limine excluding any testimony at trial concerning fair market value or actual sales value of the aircraft at any time on the ground that such information was not relevant to the damages to which Dodson was entitled.

Dodson argued then, as it argues now, that according to *Venable v. Import Volkswagen, Inc.*, 214 Kan. 43, Syl. ¶ 6, 519 P.2d 667 (1974), the proper measure of damages in Kansas, where repair fails to restore the property to its former condition and value, is the value of the property immediately before the damage less the value immediately after repairs are made, plus the reasonable cost of the repairs and minus the deductible. Dodson contends the district court misinterpreted *Venable* and erred by refusing to consider loss of value as a measure of damages. At trial, Dodson made a proffer of Dodson's vice-president's testimony, indicating he would testify to the value of the aircraft before the damage and after the repairs, to show a $99,000 loss in value.

The matters at issue concern a conclusion of law and this court's review of conclusions of law is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

1. Exclusion of Evidence.

The limitations section of Dodson's policy provides in part:

"LIMIT OF LIABILITY: SETTLEMENT OPTIONS: NO ABANDONMENTS.

"The liability of the Underwriters for . . . loss of or damage to the aircraft shall not exceed the amount of insurance set out in the Declarations, less the . . . deductible, nor what it would cost to repair or replace the aircraft or parts thereof with other of like kind and quality. . . . . *Underwriters may pay for the loss in money or may repair or replace the aircraft or parts thereof, as aforesaid* . . . .

"In the case of partial . . . loss of or damage to the aircraft when repairs are effected by the Insured the liability of the Underwriters shall not exceed

the actual cost of any parts or materials necessary to effect repairs or replacement plus 150% of the actual cost of labor to the Insured . . . *when the repairs are made by other than the Insured, the actual costs as evidenced by bills rendered to the Insured . . . .*

"In no event shall the liability of the Underwriters for partial physical loss of or damage to the aircraft exceed the amount for which the Underwriters would be liable were the loss payable as a total loss." (Emphasis added.)

The trial court found *Venable* to be distinguishable from the present case because in *Venable* the repairs were made by and at the election of the insurer, while in the present case the insured made the repairs before any election was ever made by the insurer. The court seemed to believe that the rule in *Venable* would only apply where the insurer elects to repair, the repairs are faulty, and the amount of damages is based on the faulty work.

A careful reading of *Venable* provides little support for the trial court's position. *Venable* states:

"When an insurer makes an election to repair or build under a 'repair, restore or replace clause' in its policy the insurer is then obligated to put the vehicle in substantially the same condition as it was prior to the collision so as to render it as valuable and as serviceable as before." 214 Kan. at 48.

No matter whether the insurer elects to pay or repair, or whether the repairs are done by the insurer or the insured, the measure of damages would still include the loss of value. Nowhere in the opinion did the court suggest the rule would apply only when an insurer's repairs were faulty.

Kansas, in *Venable*, has placed itself in the camp of the majority of jurisdictions interpreting such clauses to provide for determination of loss in value. See *Boyd Motors, Inc. v. Employers Ins. of Wausau*, 880 F.2d 270 (10th Cir. 1989) (applying Kansas law).

In the present case, the first paragraph of the limitations section of the policy is essentially the same as the limitations in *Venable* and it therefore is subject to the same construction. However, the policy in *Venable* apparently did not contain a limitation similar to the second paragraph of limitations in this case.

A search for cases discussing a provision like paragraph number two revealed only one case. That case, *Hubbard v. Hartford Fire*

*Ins. Co.*, 135 Wash. 558, 238 Pac. 569 (1925), held that a policy method of fixing loss or damage to a plane by allowing actual cost of materials plus one and one-half times actual labor costs was proper. In *Hubbard,* however, the policy in issue did not appear to contain a provision similar to paragraph number one in the instant case. No cases have been found which contain both provisions in the same policy.

The trial court here found "that the term of the policy relating to measure of damages, exclusions and limitations of damages are clear, concise and unambiguous." We disagree.

"Whether an ambiguity exists in a written instrument is a question of law to be decided by the court." *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.,* 243 Kan. 130, 133, 754 P.2d 803 (1988). "[R]egardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect." *State v. Smith,* 244 Kan. 283, 284, 767 P.2d 1302 (1989).

"A basic principle in the construction of contracts is that an ambiguity in the language of the contract will be strictly construed against the party who drafted the provision. *Foltz v. Begnoche,* 222 Kan. 383, 565 P.2d 592 (1977). This rule is particularly applicable to the interpretation of contracts of insurance and requires liberal construction in favor of the insured. *Brown v. Combined Ins. Co. of America,* 226 Kan. 223, 597 P.2d 1080 (1979). Coverage clauses of automobile liability policies are to be broadly interpreted to afford the greatest possible protection to the insured while exclusionary clauses are interpreted narrowly. *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co.,* 2 Kan. App. 2d 580, 584 P.2d 1264 (1978)." *Central Security Mut. Ins. Co. v. DePinto,* 235 Kan. 331, 333-34, 681 P.2d 15 (1984).

A contract is ambiguous if the application of pertinent rules of the interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. *Casey v. Aetna Casualty & Surety Co.,* 205 Kan. 495, 499, 470 P.2d 821 (1970). Once an ambiguity is found, an insurance policy is to be construed in favor of the insured and against the insurance company. A contract may be found ambiguous when, after the application of the relevant rules of interpretation to the face of the insurance contract, the words intended to express the meaning and intent of the parties may be construed to reach more than one possible meaning. *Anderson v. Nation-*

*wide Life Ins. Co.*, 6 Kan. App. 2d 163, 165-66, 627 P.2d 344, *rev. denied* 229 Kan. 669 (1981). The test to determine the intention of the parties is what a reasonable person in the position of the insured would have understood the policy terms to mean. *Casey v. Aetna Casualty & Surety Co.*, 205 Kan. at 499.

In the instant case, the meaning of the term "repair" in the policy is at issue. Following the interpretation of "repair" by the Supreme Court in *Venable*, "repair" as used in paragraph number one of the limitations means to put the insured in substantially the same condition as he was before the occurrence. Conversely, "repair" as used in paragraph number two of the limitations, and as argued by Underwriters, refers to the actual cost incurred as evidenced by bills rendered to the insured.

It can be argued that the meaning of repair is not ambiguous, that it simply has two different meanings depending upon whether the insurer elects to repair or the repair is effected by the insured or at his direction. In the present case, Dodson had the repairs done; therefore, it is entitled to "repair" as used in paragraph number two. However, under paragraph number one, Underwriters had the option to repair or replace the aircraft or pay for the loss in money. Let us assume, for example, Underwriters had elected to pay for the loss in money and the parties, using the *Venable* measure of damages, agreed that the loss was $35,000 less the $25,000 deductible. Underwriters then paid Dodson $10,000, and Dodson then obtained a bottom-of-the-line repair job for $10,000. Would Underwriters then have a cause of action under paragraph number two to recover the $10,000, since the cost of repair was less than the deductible? The only distinction between this scenario and the facts of this case is that the parties had not agreed on the loss before Dodson had the repairs done. There is no evidence in the record that Underwriters intended to repair or replace the aircraft or to do anything other than pay for the loss in money.

"[W]here an insurance company desires to limit its liability under a policy, it should employ such language as will clearly and distinctly reveal its stated purpose. [Citing cases.]" *Gowing v. Great Plains Mutual Ins. Co.*, 207 Kan. 78, 81, 483 P.2d 1072 (1971).

We believe that a reasonable person in the position of Dodson would have understood the limitations in the policy to cover the loss of value according to *Venable* as a result of hail damage less his deductible. In other words, Dodson's loss is not to be determined by who repaired the plane or the extent of repairs made.

The trial court, therefore, erred when it excluded all evidence concerning the fair market value of the plane before and after the hail damage and repairs and the extent of any loss in value as a measure of damages under this contract.

2. Exclusion of Settlement Testimony.

Dodson contends agents for Underwriters initially offered to settle the case for $85,000. The trial court, in sustaining Underwriters' motion in limine, excluded testimony on this matter, finding it to be irrelevant. Underwriters argue that it was not only irrelevant but it was also excludable under K.S.A. 60-452.

Dodson argues the testimony was relevant to show why it undertook repairs for $10,000 after having submitted a claim for $89,112.45 and to show it never considered the Goodner repairs to be sufficient. A formal proffer of what the testimony by Dodson would have been was properly offered at trial.

K.S.A. 60-452 provides:

"Evidence that a person has, in compromise or from humanitarian motives furnished or offered or promised to furnish money, or any other thing, act or service to another who has sustained or claims to have sustained loss or damage, is inadmissible to prove his or her liability for the loss or damage of any part of it. This section shall not affect the admissibility of evidence (a) of partial satisfaction of an asserted claim on demand without questioning its validity, as tending to prove the validity of the claim, or (b) of a debtor's payment or promise to pay all or a part of his or her pre-existing debt as tending to prove the creation of a new duty on his or her part, or a revival of his or her pre-existing duty."

The purposes of K.S.A. 60-452 are to promote settlement efforts and protect a defendant from an improper inference of liability. *Ettus v. Orkin Exterminating Co.*, 233 Kan. 555, 567, 665 P.2d 730 (1983). All settlement offers or negotiations are not per se inadmissible. If the evidence is offered to prove something other than liability for the loss, the language of the statute does not necessarily exclude it. See 233 Kan. at 567. Dodson has not

offered the testimony to show liability of Underwriters, so that evidence would not be excluded by K.S.A. 60-452.

The trial court, however, excluded the evidence on the ground of relevancy. "Relevancy is a matter of logic and experience and the trial court naturally possesses a certain amount of discretion in this area." *State ex rel. Murray v. Palmgren,* 231 Kan. 524, 538, 646 P.2d 1091 (1982).

Dodson admits that there was not a settlement agreement; therefore, evidence of an agreement for a specific amount would not be relevant. Upon remand for new trial, the trial court might consider allowing Dodson some opportunity to explain that, when it proceeded to repair the plane, it did not realize that Underwriters would claim that its liability under the policy would be limited by the cost of repair. The specific testimony that the trial court should allow we leave to its good judgment. However, based on the evidence proffered, the court did not abuse its discretion.

3. Jury Instruction Regarding Concealment and Misrepresentation.

At trial the court issued the following instruction to the jury.

"No. 13: You are further instructed that the policy of insurance or contract between the parties provides that it shall be void if the insured has concealed or misrepresented any material fact or circumstances or the subject thereof or false swearing by the plaintiffs touching any matter relating to this insurance or their airplane insured under the policy, whether before or after the loss."

Dodson made a timely objection to this instruction.

The instruction was based on a clause in the insurance contract which read as follows:

"17. MISREPRESENTATION AND FRAUD.

"This Policy shall be void if the Insured has concealed or misrepresented any material fact or circumstance whether under the Declarations or not concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

Dodson argues the jury instruction was improper because it did not adequately state the law regarding false swearing sufficient to void an insurance contract.

It is the duty of the trial court to properly instruct the jury upon the theory of the case. Errors regarding jury instructions

will not demand reversal unless they result in prejudice to the appealing party. *Trout v. Koss Constr. Co.*, 240 Kan. 86, 88, 727 P.2d 450 (1986). "If jury instructions properly and fairly state the law as applied to the facts in the case when considered as a whole, and if the jury could not reasonably be misled by them, the instructions should be approved on appeal." *Powers v. Kansas Power & Light Co.*, 234 Kan. 89, 92, 671 P.2d 491 (1983).

To determine whether the facts and law justified the instruction in question, it is first necessary to examine the facts to see if there was some substantial evidentiary basis upon which the jury could find a false swearing. Special question number four to the jury asked: "Did the Plaintiffs, through their agents or employees, conceal or misrepresent any material fact or circumstance or engage in any false swearing concerning their claim for hail damage to the subject aircraft?" To this the jury answered: "Yes." Neither the court nor the jury set forth the specific nature of the concealment, misrepresentation, or false swearing that was the basis for this finding.

Underwriters, in their brief on appeal, set forth five incidents as providing substantial evidence for the jury's finding and the court's jury instruction.

*First*, Underwriters argue the insurance policy required Dodson to produce invoices for repair work done, but Kieszkowski testified Dodson did not submit any invoice for the work done by Goodner, amounting to a concealment. The jury, however, was never privy to the actual insurance contract, and it does not appear this particular term was made known to it. The clause to which Underwriters seems to be referring states:

"When loss occurs, the Insured shall:

. . . .

"(c) file proof of loss with the Underwriters' representatives within sixty (60) days after the occurrence of loss . . . *and as often as required* shall produce for examination all . . . invoices . . . at such reasonable place as may be designated by the Underwriters or their representatives . . . ." (Emphasis added.)

There was no evidence Underwriters ever requested that Dodson produce the invoice from Goodner. There was no substantial evidence of a concealment based on those facts.

*Second*, Underwriters allege the jury could have found Dodson's production of the Goodner invoice showing a $10,000 repair expense to have been fraudulent. Underwriters point to the fact that in the second invoice the amount had been increased from $5,500 to $10,000 and the work description had been changed to delete the words "sand and fill." They seem to allege this was an attempt to conceal the repair work and falsify its cost.

The uncontroverted testimony of Goodner, however, indicated that the invoice was changed because the original invoice did not reflect the true charges, omitting a $4,500 credit received, and that Dodson did not request the deletion of the "sand and fill" wording. There was no substantial evidence here upon which a jury could properly find a misrepresentation.

*Third*, Underwriters allege Dodson testified at trial that repairs were performed only to the fuselage and not to the wings, yet Kieszkowski testified that, when he examined the aircraft the second time, the wings had also been repaired.

Robert Dodson gave deposition testimony on June 19, 1989, that he did not remember that any filler had been used in the left wing and was not aware repair work had been done to the wings. At trial, he testified that repairs had been done to more than just the fuselage but indicated his answers at the deposition were correct as far as his knowledge at that time. Goodner's testimony was that Dodson's work orders had only related to the fuselage.

There was no substantial evidence of a misrepresentation contained in this evidence. Underwriters did not choose to pursue the matter further. Moreover, any significance to this testimony was never emphasized at trial. Underwriters, in their closing argument which summarized the evidence for misrepresentations by Dodson, did not raise these facts. It is doubtful they served as the basis for either the court's instruction or the jury's deliberations.

*Fourth*, on November 29, 1988, Robert L. Dodson, Jr., in response to an interrogatory asking him to identify who had performed repairs to the hail damage to the aircraft, responded that there had been no repair but only a paint job by Goodner. In response to an interrogatory asking what repair had been performed, Dodson, Jr., replied by writing "N/A."

*Fifth*, at a deposition apparently taken on July 12, 1989, Dodson, Jr., testified that the hail damage had not been repaired.

These last two incidents were, presumably, the basis for the jury instruction and the jury finding, and both occurred after litigation had begun. The overwhelming majority of jurisdictions hold that only false statements made before legal proceedings have begun can serve to void an insurance policy. See Annot., 64 A.L.R.2d 962 and Later Case Service for Annot., 64 A.L.R.2d 962-66. This rule is applied, despite the fact no such condition is expressed in the contract provision, usually on the basis of public policy, narrow construction, or a finding that this is what the parties must have intended.

The rationale for this rule was best stated in *American Paint Service v. Home Insurance Co. of N.Y.*, 246 F.2d 91, 94 (3d Cir. 1957):

"The fraud and false swearing clause is one beneficial to the insurer and it reasonably extends to protect the insurer during the period of settlement or adjustment of the claim. When settlement fails and suit is filed, the parties no longer deal on the non-adversary level required by the fraud and false swearing clause. If the insurer denies liability and compels the insured to bring suit, the rights of the parties are fixed as of that time for it is assumed that the insurer, in good faith, then has sound reasons based upon the terms of the policy for denying the claim of the insured. To permit the insurer to await the testimony at trial to create a further ground for escape from its contractual obligation is inconsistent with the function the trial normally serves. It is at the trial that the insurer must display, not manufacture, its case. Certainly the courts do not condone perjury by an insured, and appropriate criminal action against such a perjurer is always available."

The only false statements for which there was substantial evidence were made after the claim had been denied and the present action filed. As a matter of law, the statements could not serve to void the policy. The trial court erred in giving the jury instruction in question, resulting in prejudice to Dodson.

Reversed and remanded for new trial.