Alicia Lynn **DELLEDONNE**, Plaintiff,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
**Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted: April 10, 1992.
Decided: May 4, 1992.

Theodore F. Sandstrom, Wilmington, for plaintiff.

Donald M. Ransom, of Casarino, Christman & Shalk, Wilmington, for defendant.

## OPINION

BARRON, Judge.

This is an action brought by Alicia Lynn Delledonne (plaintiff) against the State Farm Mutual Insurance Company (defendant) to recover for the alleged breach of an automobile insurance contract. The matter is presently before the Court on defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment.

Following a ruling against the plaintiff by the State Insurance Commissioner's Arbitration Committee, the plaintiff filed her complaint on January 2, 1991 seeking to recover her loss in value to her automobile.[1] Defendant filed its answer on February 15, 1991 denying the alleged loss in value and any obligation under the terms of its policy to pay for such loss if proven. The case was again arbitrated and defendant appealed to this Court requesting trial *de novo*. Defendant filed its motion for summary judgment on November 8, 1991 and plaintiff filed her response and cross-motion on November 27, 1991. The Court ordered briefing by Order dated December 18, 1991. Legal briefs having been filed, the case is now ripe for decision.

## I.

The plaintiff insured is an adult resident of New Castle County, Delaware, and the defendant is a foreign insurer doing business in Delaware. The plaintiff's vehicle has been insured at all times relevant to this action under an automobile insurance policy issued to her by defendant.[2] On July 5, 1990, plaintiff's automobile, a 1990 Nissan 240SX, sustained flood water damage while parked in a Maryland National Bank branch office near Ogletown, Delaware. The repair work, apparently including new carpeting, new door-mounted speakers and a new engine computer, was completed by Alderman Nissan and paid for by defendant at a total cost of $1,387.93. Plaintiff, on the basis of appraisals, alleges a loss in value as a proximate result of the flood damage in the amount of $8,000 and seeks recovery thereof.

Defendant moved for summary judgment on the basis that the terms of its policy limit its liability to "repair or replacement" costs, and that such costs do not include loss in value. Plaintiff cross-motions for summary judgment on the grounds that the policy language covers loss in value and defendant has failed to rebut plaintiff's estimate of $8,000 loss in value damages.

## II.

A party moving for summary judgment has the burden of demonstrating with reasonable certainty, that there is no genuine

1. Although, in her complaint, plaintiff seeks "damages and loss in value," her memoranda make clear that the terms are used interchangeably to indicate loss in value. Therefore, consideration of defendant's partial motion to dismiss the damages claim is not warranted.

2. State Farm Mutual Automobile Insurance Company Insurance Policy No. 4112–671–08H.

issue as to any material fact and said party is entitled to judgment as a matter of law. *Delmar News, Inc. v. Jacobs Oil Co.,* Del.Super., 584 A.2d 531, 533 (1990), citing *Matas v. Green,* Del.Super., 171 A.2d 916 (1961). The Court must view the facts in a light most favorable to the non-moving party. *Guardian Construction Co. v. Tetra Tech Richardson, Inc.,* Del.Super., 583 A.2d 1378 (1990); *Danforth v. Acorn Structures, Inc.,* Del.Super., C.A. No. 90C–JN–30, 1991 WL 215658, Herlihy, J. (Aug. 27, 1991), citing *Schagrin v. Wilmington Medical Center, Inc.,* Del.Super., 304 A.2d 61 (1973). The Court will not grant summary judgment under any circumstances where the record reasonably indicates a material fact in dispute or if it seems desirable to inquire more thoroughly into the facts to clarify the application of the law to the circumstances. *Carillo v. Counsel of South Bethany, et al.,* Del.Super., C.A. Nos. 86A–NO–2, 86C–OC–23, 86M–OC–8, 1991 WL 113627, Lee, J. (May 24, 1991), citing *Ebersole v. Lowengrub,* Del.Supr., 180 A.2d 467 (1962).

### III.

Under the terms of the policy in question the defendant is obligated to pay for *"loss* to [the insured's] car," including loss caused by "flood" damage.[3] The limit of liability provision, the construction of which is directly at issue in this case, provides, in pertinent part:

> The limit of our liability for *loss* to property or any part of it is the lower of:
> 1. The actual cash value; or
> 2. the cost of repair or replacement.
>
> *   *   *   *   *   *
>
> We have the right to settle a *loss* with *you* or the owner of the property in one of the following ways:
> 1. pay up to the actual cash value;
> 2. pay to repair or replace the property or part with like kind and quality.... (Emphasis in original.)

**3.** "Loss" is defined in the policy as: "Each direct and accidental loss of or damage to" the insured's car.

The defendant contends that the policy does not provide for the payment of any perceived or residual loss in value. Defendant argues that it fulfilled its obligation under the terms of its insurance contract when it paid the cost of the repairs made on plaintiff's car by Alderman Nissan. Plaintiff argues in essence that the policy phrase "repair or replace ... with like kind and quality" is ambiguous, and that, in keeping with defendant's obligation to fully compensate plaintiff for her loss, it must be construed to include loss in the form of loss in value. Both parties have cited cases directly in support of their arguments. In Delaware, however, the question is one of first impression.

Under Delaware law, ambiguous language in an insurance contract is construed against the insurer. *National Union Fire Ins. Co. of Pittsburgh, PA. v. Stauffer Chem. Co.,* Del.Super., 558 A.2d 1091, 1093 (1989), citing *Steigler v. Insurance Co. of North America,* Del.Supr., 384 A.2d 398 (1978). *See e.g., New Castle County v. Continental Casualty Co.,* 725 F.Supp. 800, 810 (D.Del.1989), *aff'd in part, rev'd in part, New Castle County v. Hartford Accident & Indemnity Co.,* 933 F.2d 1162 (3rd Cir.1991). Such constructional preference is in keeping with the general rule that, when drafted by the insurer, insurance policies are construed strongly against the insurer. *See Hallowell v. State Farm Mutual Automobile Ins. Co.,* Del.Supr., 443 A.2d 925, 926 (1982). Language is ambiguous if it is susceptible to two or more reasonable interpretations. *Derrickson v. American National Fire Ins. Co.,* Del.Super., C.A. No. 84C–SE–14, Ridgely, J., at 3, 1987 WL 14884 (June 30, 1987), citing *Hallowell, supra.* The Court will look to the "reasonable expectations of the insured" at the time of entrance into the contract if the policy terms are ambiguous or conflicting, contain a hidden trap or pitfall, or if the fine print takes away that which has been provided by the large print. *Hallowell, supra,* 443 A.2d at 927. It is the view of

this Court that the susceptibility of the policy language in dispute in the instant case to two or more reasonable interpretations is evidenced in part by the development of two distinct lines of authority in the interpretation of similar policy language. In one camp of construction, the courts have held that policy language requiring the insurer to "repair or replace" the property "with like kind and quality" limits the insurer's duty to repair the vehicle to substantially the same physical/operating condition as before the damage. *See Johnson v. State Farm Mutual Automobile Ins. Co.*, App., 157 Ariz. 1, 754 P.2d 330, 331 (1988); *Ray v. Farmers Ins. Exchange*, 200 Cal.App.3d 1411, 246 Cal.Rptr. 593 (1988); *General Accident Fire & Life Assurance Corp. v. Judd*, Ky.App., 400 S.W.2d 685, 688 (1966). This Court finds the better view to be that of the majority of jurisdictions, however, which hold that an insurer's provision to "repair or replace" a vehicle or its parts with "like kind and quality," requires that the insurer pay for diminution in value. *See Dodson Aviation v. Rollins, Burdick, Hunter of Kansas, Inc.*, 15 Kan.App.2d 314, 807 P.2d 1319, 1322 (1991); *Venable v. Import Volkswagen, Inc.*, 214 Kan. 43, 519 P.2d 667, 673 (1974); *Northwestern National Ins. Co. v. Cope*, Tex.Civ.App., 448 S.W.2d 717, 719 (1969); *Campbell v. Calvert Fire*, 234 S.C. 583, 109 S.E.2d 572, 591–92 (1959). The underlying rationale for these decisions is essentially that in the context of an insurance contract, the words "repair or replace" with "like kind and quality" mean the restoration of the vehicle to substantially the same condition as prior to the damage; and restoration to such condition can not be said to have been effected if the repairs fail to render the vehicle as valuable as before. *See Dodson Aviation, supra*, 807 P.2d at 1322; *Cope, supra*, 448 S.W.2d at 719; *Campbell, supra*, 109 S.E.2d at 576; *Ray, supra*, 246 Cal.Rptr. at 599 (dissenting opinion). Furthermore, in *Dodson, supra*, the Kansas Court of Appeals made clear that the measure of damages under such clauses includes the loss in value regardless whether the insurer or the

insured made the repairs. 807 P.2d at 1322.

The line of reasoning underlying these decisions was applied and explained by the Supreme Court of South Carolina in *Campbell, supra*. In that case, the limit of liability provision provided:

> The limit of the company's liability for loss shall not exceed either (1) the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss or (2) what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation. . . .

In discussing the measure of damages to be applied on remand, the Court stated the purpose of this type of insurance policy

> is to compensate the insured in full for any loss or damage to his automobile less any deduction specified. Under its terms, the Company has the option after a collision of having the automobile repaired. As pointed out in *Rossier v. Union Automobile Insurance Co.*, 134 Or. 211, 291 P. 498, 500, ' "In many instances the injury to the automobile may be of such nature and extent that, after repairs have been made, there will be no diminution of value. Under such circumstances the cost of repairs would be equivalent to the difference between the value of the automobile before and after the collision.' " But as there pointed out, restoration of the car to its former condition ' "may or may not be accomplished by repair or replacement of broken or damaged parts. It cannot be said that there has been a complete restoration of the property unless it can be said that there has been no diminution of value after repair of the car.' " .

*Id.*, 109 S.E.2d at 576.

The South Carolina Court went on to add that, depending on the particular facts of the case, the appropriate and fair measure of damages could be achieved by awarding either the difference between the fair cash value of the car before and after the colli-

**354**

sion,[4] or, similarly, the cost of repairs plus any diminution in value.[5]

As stated succinctly by the dissent in *Ray, supra:*

> This interpretation is the only reasonable construction of a contract provision requiring an insurer to "repair or replace" the damaged property or part with another of "like kind and quality." To permit the insurer to repair the car to comparable physical condition and function while its value has plummeted does not compensate the insured with a car of "like kind and quality" as the average person would understand those words. The purpose of the policy is to compensate plaintiff for any loss or damage, less any deduction. Plaintiff is entitled to have a car just as valuable as the car was before the accident. Anything less would not be adequate compensation for the loss sustained.

*Ray, supra,* 246 Cal.Rptr. at 599.

■ The foregoing reasoning is especially applicable in the context of the instant case. It can not reasonably be believed that the "repair" of a vehicle which has been flood-damaged with "like kind and quality" is complete upon making basic physical repairs. It is well-known in the insurance industry that automobiles suffer great loss in value as a direct result of their status as flood-damaged vehicles. An insurer wishing to avoid such liability should employ language in its policy that clearly reveals its intent to do so. Based on the foregoing discussion and the language of the policy at issue, this Court finds that, the language being ambiguous, the loss in value to the plaintiff's vehicle must be added to the cost of the repairs made in order to give effect to the reasonable expectations of the insured plaintiff. The Court is not convinced, however, that plaintiff has established satisfactorily the monetary loss in value to her vehicle. That issue is one for trial.

For the aforegoing reasons, defendant's motion for summary judgment is DENIED, and plaintiff's cross-motion for summary judgment is DENIED.

It Is So ORDERED.

---

4. See *Cope, supra,* 448 S.W.2d at 719; *National Farmers Union Property & Casualty Co. v. Watson,* Okla.Supr., 298 P.2d 762, 767 (1956).

5. See, *American Standard County Mutual Ins. Co. v. Barbee,* Tex.Civ.App., 262 S.W.2d 122, 124 (1953); *Potomac Insurance Co. v. Wilkinson,* 213 Miss. 520, 57 So.2d 158, 43 A.L.R.2d 321 (1952).