649 A.2d 1383

ALICE THOMAS A/K/A ALICE THOMAS–BURGE, PLAINTIFF,
v. NEW JERSEY INSURANCE UNDERWRITING
ASSOCIATION (NJIUA), DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

Decided July 25, 1994.

*William S. Greenberg* for plaintiff (*Jeffrey G. Paster,* attorney).

*Richard Nichols* for defendant (*Gennet, Kallmann, Antin & Robinson,* attorneys).

GOLDMAN, J.S.C.

This is an insurance fraud case. The plaintiff, Alice Thomas–Burge (Burge), was insured with the defendant, the New Jersey Insurance Underwriting Association (NJIUA)[1] under a home-owners policy issued on October 11, 1991. On or about January 2, 1992, Burge reported to NJIUA and to the police that her property had been vandalized. NJIUA initially denied Burge's claim because it believed the vandalism occurred over time and no single act of vandalism brought the claim over the $250.00 deductible per incident. Burge sued NJIUA under the policy. A jury verdict was rendered in favor of NJIUA.

[1] NJIUA was established by *N.J.S.A.* 17:37A–3 to provide insurance to urban properties in accordance with the recommendations of the President's Advisory Panel on Insurance in Riot Affected Areas.

Burge now moves for a new trial on the ground that the verdict was against the weight of the evidence. *R.*4:49–1(a). NJIUA moves for the assessment of counsel fees and investigative costs pursuant to *N.J.S.A.* 17:33A–7a, the New Jersey Insurance Fraud Prevention Act.

Burge's answers to interrogatories included an $11,000 damage estimate dated November 24, 1992, from Albert Wright, who admitted at depositions that he originally gave Burge a $7,000 estimate. Burge then asked Wright to inflate it to $12,000. Wright responded that $12,000 was too high, but $11,000 was alright. Burge claimed that she did not submit the estimate until after NJIUA had denied the claim, and that the difference between the $7,000 estimate and the $11,000 estimate arose because roof repairs were included in the higher estimate and excluded in the lower one.

This "padded" estimate became a new basis for NJIUA's defense. NJIUA now asserted that submitting a false estimate entitled it to disclaim.[2] On December 17, 1993, NJIUA amended its answer alleging, for the first time, violation of the policy's fraud and concealment clause as a defense. Burge contended that her alleged misrepresentation could not have been material because NJIUA had rejected her claim for a different reason.

The jury found by a six to two [3] vote that the vandalism had occurred on or about January 2, 1992. The jury unanimously found that Burge made a misrepresentation and that it was knowing. The jury found the misrepresentation to be material by a six to two vote. This resulted in a verdict for NJIUA.

---

[2] The concealment or fraud clause in the Burge policy with NJIUA reads: **Concealment or Fraud.** This policy is void in any case of fraud by you as it relates to this coverage at any time. It is also void if you or any other insured, at any time, conceals or misrepresents a material fact.

[3] Both parties agreed that a vote of six to two would be a proper verdict.

■ Burge's motion under *R.*4:49–1(a) lacks merit. If the misrepresentation were properly before the jury, its findings were warranted because evidence of Burge's intentional "padding" was substantial. One issue, not raised until after the trial, requires extensive discussion. Burge argues her misrepresentation could not have been material *as a matter of law* because NJIUA had already denied her claim. The misrepresentation occurred *during* the ensuing litigation.

I hold that neither the majority rule that misrepresentations made during litigation can *never* be a basis for rejection of a claim nor the minority rule that misrepresentations made as late as the actual trial are a basis for rejection is sound law in New Jersey. Instead *Longobardi v. Chubb Ins. Co.*, 121 *N.J.* 530, 582 *A.*2d 1257 (1990), teaches that *when* a misrepresentation is made is critical to determining materiality and materiality is a jury question.

The overwhelming majority rule is that misrepresentations made during litigation never void coverage. *American Paint Serv. Inc. v. Home Ins. Co.*, 246 *F.*2d 91 (3rd Cir.1957) (*American Paint* ); *Mercantile Trust Co. v. New York Underwriters Ins. Co.*, 376 *F.*2d 502 (7th Cir.1967); *Royal Ins. Co. v. Story*, 40 *So.*2d 719, *cert. den.*, 252 *Ala.* 275, 40 *So.*2d 724 (1949); *Ichthys, Inc. v. Guarantee Ins. Co.*, 249 *Cal.App.*2d 555, 57 *Cal.Rptr.* 734 (Ct. of App.1967); *Rego v. Connecticut Ins. Placement Facility*, 219 *Conn.* 339, 593 *A.*2d 491 (1991); *Tarzian v. West Bend Mut. Fire Ins. Co.*, 74 *Ill.App.*2d 314, 221 *N.E.*2d 293 (1966); *Dodson Aviation, Inc., v. Rollins, Burdick, Hunter of Kansas, Inc.*, 15 *Kan. App.*2d 314, 807 *P.*2d 1319 (1991); *Home Ins. Co. v. Cohen*, 357 *S.W.*2d 674 (Ky.Ct. of App.1962); *Ocean–Clear Inc. v. Continental Casualty Co.*, 94 *A.D.*2d 717, 462 *N.Y.S.*2d 251 (1983); *Halbreich v. Urbaine Fire Ins. Co.*, 238 *A.D.* 842, 262 *N.Y.S.* 742 (1933). Authorities cite *American Paint* as the prevailing rule. *Annotation, Applicability of fraud and false swearing clause of fire insurance policy to testimony given at trial,* 64 *A.L.R.*2d 962 (1959); 13A *Couch on Insurance* 2d § 49A:1855A (Rev. ed. 1982); 5A *Appleman on Insurance* § 3587 (Rev. vol. 1970). *Contra*

*Lomartira v. American Auto. Ins. Co.*, 371 *F*.2d 550 (2d Cir.1967) (*Lomartira*); *Follett v. Standard Fire Ins. Co.*, 77 *N.H.* 457, 92 *A.* 956 (1915).

There are three reasons for the majority rule. First, once litigation begins, the policy language no longer governs, and the insured has no duty to avoid misrepresentations. "When settlement fails and suit is filed, the parties no longer deal on the nonadversary level required by the fraud and false swearing clause." *American Paint, supra,* 246 *F*.2d at 94.

Second, it would be both unfair and unmanageable if insurers could first claim at trial that trial testimony itself could form the basis for a misrepresentation claim.

> To permit the insurer to await the testimony at trial to create a further ground for escape from its contractual obligation is inconsistent with the function the trial normally serves. It is at the trial that the insurer must display, not manufacture, its case.
>
> [*American Paint, supra,* 246 *F*.2d at 94].

Third, if trial testimony could itself form the basis for a misrepresentation claim, the policy of promoting settlements with pretrial discovery and a mutual knowledge of the case would be destroyed because the insurer, even if its defense were weak would hope for a mistake at trial that, suddenly, could ripen into a defense.

*Lomartira* disagreed and held that a misrepresentation at trial does void a policy when the policy's fraud provision was clear on its face. The provision in that case referred to a misrepresentation at "any" time, and *Lomartira* took the meaning of "any" literally.

*Lomartira* also noted that "many cases are settled after pretrial discovery, during trial, or pending appeal for a new trial." Therefore, fraudulent statements at this juncture could clearly influence settlements. Insureds should not deceive insurers during litigation with impunity. Finally, *Lomartira* found no basis for the assertion that allowing such defenses would encourage insurers to litigate claims in the hope that their insureds would eventually

blurt out fraudulent testimony. *Lomartira, supra,* 371 *F*.2d at 554.

The practical problem of claims arising *at* trial will be governed by *R*.4:9–1. Discovery can also limit late claims. If an amendment were prejudicial or if evidence were not disclosed in discovery, it could be barred and the late claim of misrepresentation would fail. Here, NJIUA had time to amend its answer. Burge had ample notice of NJIUA's defense.

*American Paint* predicted New Jersey law but there was no New Jersey precedent. *Lomartira* predicted Connecticut law but the Connecticut Supreme Court later held that it was wrong. *Rego v. Connecticut Ins. Placement Facility, supra.*

New Jersey case law prior to *American Paint* was sparse. It cited an old United States Supreme Court case, *Republic Fire Ins. Co. v. Weides,* 81 *U.S.* (14 *Wall.*) 375, 20 *L.Ed.* 894 (1871):

It is true the policies stipulated that fraud or false swearing on the part of the assured should work a forfeiture of all claim under them. The false swearing referred to is such as may be in the submission of preliminary proofs of loss, or in the examination to which the assured agreed to submit. But it does not inevitably follow from the fact that there was a material discrepancy between the statements made by the plaintiffs under oath in their proofs of loss, and their statements when testifying at the trial that the former were false, so as to justify the court in assuming it, and directing verdict for the defendants. It may have been that the testimony last given was not true, or the statements made in the proofs of loss may have been honestly made, though subsequently discovered to be mistaken. It is only fraudulently false swearing in furnishing the preliminary proofs, or in the examinations which the insurers have a right to require, that avoids the policies, and it was for the jury to determine whether that swearing was false and fraudulent.

[*Id.* at 382–383].

*Republic Fire* was cited by *Carson v. Jersey City Ins. Co.,* 43 *N.J.L.* 300 (Sup.Ct.), *aff'd,* 44 *N.J.L.* 210 (E. & A. 1881), but not relating to false statements during litigation. *Weil v. Pennsylvania Fire Ins. Co.,* 58 *N.J.Super.* 145, 155 *A.*2d 781 (App.Div.1959) said in *dicta,* in a case in which the statement was neither described nor explained:

> [T]he alleged false swearing prior to the trial was not pleaded by appellant's answer and therefore it was properly rejected as a defense by the trial court. The false swearing which it is alleged took place at the trial would not avoid the policy.
> [*Id.* at 152, 155 *A.*2d 781].

On the other hand, *Knight v. Boston Ins. Co.*, 113 *N.J.L.* 132, 172 *A.* 594 (E. & A. 1934) had said:

> The condition in an insurance policy which provides that all fraud, or attempt at fraud by false swearing or otherwise, shall cause a forfeiture of all claim under the policy, is available as a defense only when it appears that the assured knowingly and intentionally swore falsely. Mere mistake in stating facts is not sufficient to sustain the defense.
>
> [citing *Carson v. Jersey City Ins. Co., supra* ].

*   *   *   *   *   *   *   *

> The question of whether or not the plaintiff swore falsely *either at the trial or at his examination before the trial* was fully presented to the jury in a charge in which the court used the exact language that defendants' counsel requested, and the jury found as a fact that the plaintiff did not swear falsely at any time.
> [*Knight, supra,* 113 *N.J.L.* at 135–136, 172 *A.* 594 (emphasis added).]

Thus, there is no binding precedent.[4] To decide this case I must weigh the competing perspectives in light of *Longobardi v. Chubb Ins. Co. of N.J., supra,* (*Longobardi* ).

In *Longobardi* the jury found that the insured lied about knowing two persons who had been convicted of insurance fraud where they arranged phony appraisals and bogus burglaries in circumstances similar to the insured's claim for the burglary of figurines. The Appellate Division had reversed the trial court dismissal on the jury verdict because it found that a post-loss misstatement must prejudice the insurer to forfeit the insured's claim under the policy.

---

4 Precedent regarding misrepresentations or concealments during pretrial discovery (as opposed to allegations of perjury at trial) is sparse nationally. Strictly speaking, *American Paint* only deals with alleged perjury at trial; however it has been cited by those few cases dealing with pretrial discovery in support of the majority rule. *Dodson Aviation, Inc., v. Rollins, Burdick, Hunter of Kansas, Inc., supra; Ocean–Clear Inc. v. Continental Casualty Co., supra.* These cases do not discuss the distinctions between fraud in pretrial discovery and perjury at trial. Therefore as it relates to pretrial discovery misrepresentations, *American Paint* could be distinguished.

*Longobardi* found that "the better rule is one that induces insureds to answer truthfully questions about their losses. Prejudice from a post-loss misrepresentation, therefore, is unnecessary to relieve the insurer of its liability." 121 *N.J.* at 542, 582 *A.*2d 1257. *Longobardi* wanted to "provide[ ] insureds with an incentive to tell the truth." 121 *N.J.* at 541, 582 *A.*2d 1257. To be material, a misrepresentation need not actually influence the insurer so long as it had the capacity to do so, because: "misrepresentations strike at the heart of the insurer's ability to acquire the information necessary to determine its obligations and to protect itself from false claims." 121 *N.J.* at 539, 582 *A.*2d 1257.

*Longobardi* reaffirmed that "the law disfavors forfeitures." 121 *N.J.* at 537, 582 *A.*2d 1257. It also required that materiality be judged at the time a misrepresentation is made without the benefits of or drawbacks from hindsight. Materiality must be judged by its *capacity* to affect the insurer. 121 *N.J.* at 541, 582 *A.*2d 1257.

Quoting and agreeing with the Second Circuit Court of Appeals, *Longobardi* said:

> The law is clear that the materiality of false statements during an insurance company investigation is not to be judged by what the facts later turn out to have been. The purpose of a provision requiring an insured to submit to an examination under oath is to enable the insurance company to acquire knowledge or information that may aid it in its further investigation or that may otherwise be significant to the company in determining its liability under the policy and the position it should take with respect to a claim. Thus the materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding.
>
> [*Longobardi, supra,* 121 *N.J.* at 541, 582 *A.*2d 1257, quoting *Fine v. Bellefonte Underwriters Ins. Co.,* 725 *F.*2d 179, 183 (2d Cir.1984), *cert. denied,* 474 *U.S.* 826, 106 *S.Ct.* 86, 88 *L.Ed.*2d 70 (1985) ].

Put another way, "materiality should be judged according to a test of prospective reasonable relevancy." 121 *N.J.* at 542, 582 *A.*2d 1257.

Parties are expected to cooperate fully with each other during pretrial discovery. *Lomartira* correctly explains that settlement negotiations continue through the discovery process. Most cases

are settled. "[F]alse swearing after the commencement of an action would clearly influence such settlements." *Lomartira*, 371 F.2d at 554. Burge's claim was denied because NJIUA did not believe the vandalism had occurred as alleged. NJIUA was not initially concerned with the amount of the loss. As in all civil cases, negotiations continued through to trial.

Just as *Lomartira* based its ruling on the literal use of the word "any" in the insurance policy, so did *Longobardi*. Referring to the phrase "any material fact," *Longobardi* says "any means any." 121 *N.J.* at 539, 582 A.2d 1257. The language in the Burge–NJIUA policy twice refers to a concealment or misrepresentation "at *any* time." If "any" meant "any" in both *Lomartira* and *Longobardi*, "any" should mean "any" here as well. When the misrepresentation was made should not make a difference.

I must also consider the New Jersey Insurance Fraud Prevention Act, *N.J.S.A.* 17:33A–1 to –15, and its strong New Jersey policy against insurance fraud. It "authorizes a sanction for each material false statement knowingly submitted in support of a fraudulent claim for insurance proceeds that significantly enhances the credibility of or evidentiary support for the claim." *Merin v. Maglaki*, 126 *N.J.* 430, 432, 599 A.2d 1256 (1992). Nothing in this language suggests that statements made during litigation are excluded from its scope.

> The statute could hardly be clearer in describing a violation to include submission of "any written or oral statement as part of, or in support of * * * a claim for payment or other benefit pursuant to an insurance policy." *N.J.S.A.* 17:33A–4(a)(1).
>
> [*Merin v. Maglaki*, *supra*, 126 *N.J.* at 435, 599 A.2d 1256 (emphasis omitted).]

For policy, courts should look to legislative enactments and the legislative policy is clear:

> The purpose of this act is to confront aggressively the problem of insurance fraud in New Jersey by facilitating the detection of insurance fraud [and] eliminating the occurrence of such fraud through the development of fraud prevention programs.
> [*N.J.S.A.* 17:33A–2.]

This policy also argues against the risk that the majority rule permits insureds to practice deception with impunity. An example

of how deception with impunity might be encouraged by a rigid rule that barred consideration of fraud during litigation is *Reed v. Commercial Union Ins. Co.,* 97 *A.D.*2d 949, 468 *N.Y.S.*2d 738 (1983). There Commercial Union claimed it had canceled a fire policy before the loss and denied payment. After suit, Reed was granted partial summary judgment on liability. Discovery then proceeded on damages and Reed made false statements about his lost income at depositions. Commercial Union moved to vacate the prior order determining liability to permit it to allege this new fraud. The trial court not only vacated its prior order but also, on the facts, granted summary judgment against Reed based on the new fraud and dismissed the complaint. On appeal, the Appellate Division reversed and reinstated the judgment on liability, holding that:

> Once an insurer disclaims liability, an insured is excused from fulfilling any of the obligations under the policy.... After such disclaimer the insurer "must then stand or fall upon the defense upon which it based its refusal to pay" and "may not thereafter attempt to create other grounds for [its] refusal to pay".
>
> [*Reed, supra,* 97 *A.D.*2d 949, 468 *N.Y.S.*2d 738 (citations omitted).]

*Reed* and similar cases also err in failing to recognize that once the insurance policy has been deemed to be in effect again (because the denial was wrongful) there is no reason for the parties to be freed from their mutual obligations of good faith and their mutual obligations under the policy. In effect, the policy is reinstated. As a further example the Burge property was destroyed by fire in September of 1992, and Burge was paid by NJIUA under the same policy under litigation here. The policy was still in effect, but by then the vandalism claim had already been denied. In either setting, to free insureds from their obligations to avoid fraud would be contrary to the New Jersey Insurance Fraud Prevention Act.

The key to choosing between the competing perspectives of *American Paint* and *Lomartira* is the understanding of *Longobardi* that materiality depends upon when the misrepresentation is made. "The focus, therefore, should be on the time when the insured is about to let loose the lie." *Longobardi, supra,* 121 *N.J.*

at 542, 582 *A*.2d 1257. With this understanding there is no need to choose between the absolute rules of either *American Paint* or *Lomartira*.

With respect to a lie let loose for the first time at trial, it may be hard to prove its capacity to affect the attitude and action of the insurer. The proofs necessary to establish the capacity to influence will prove difficult to disclose in adherence with pretrial discovery obligations when the fraud is not known until trial. It remains the insurer's burden of proof on this issue, so that with respect to fraud at trial, the result in *American Paint* will usually prevail.

On the other hand, with respect to fraud committed earlier during the litigation process, the insurer should be permitted to try to prove the capacity of the fraud to affect its attitude and action. Proof of such capacity may be difficult if the fraud occurs in the later stages of the litigation process. Proof of such capacity may be easy if the fraud occurs early, for example, when a litigation deposition also serves as the "examination under oath" permitted under a policy as in *Ocean–Clear, Inc. v. Continental Casualty Co., supra.* Here the fraud did not occur at trial as it had in *American Paint.* Instead it occurred early enough for NJIUA to formally amend its answer.

The charge to the jury here required it to make precisely the determination required by *Longobardi.* I charged the jury that "[m]ateriality should be judged as of the time when the misrepresentation is made." I explained that "the materiality requirement is satisfied if the false statement concerns a subject relevant and germane to NJIUA's investigation *as it was then proceeding.*" This is precisely the ground that counsels' closing arguments covered. Burge's counsel argued that because NJIUA had already denied the claim, there was no investigation then proceeding. NJIUA's counsel argued that the false statement still had the capacity to be relevant and germane to NJIUA's investigation. The jury was not unanimous on this issue, but its determination deserves respect and must prevail.

In summary, neither the rigid majority rule of *American Paint* nor the rigid minority rule of *Lomartira* is sound law in New Jersey. Instead *Longobardi* teaches that *when* a misrepresentation is made is critical to determining materiality, and materiality is a jury question. In addition, rules governing pretrial discovery and amendments to pleadings will preclude last minute claims of misrepresentation. As a practical matter, lies first made at trial will almost never fulfill a materiality requirement while lies made in pretrial discovery probably will, but this is a matter of proof for a jury and not a matter of law.

Therefore, Burge's motion for a new trial, or in the alternative, a judgment notwithstanding the verdict is denied. NJIUA's motion under *N.J.S.A.* 17:33A–7a is granted. There is no contest over the amount of NJIUA's claim, and I have independently reviewed the supporting certification and exhibits. Judgment will be entered for NJIUA for $11,114.43.