No. 41,065

CLARA B. HANSCOME, *Appellee*, v. W. J. COPPINGER, WALTER T. MAHONEY, GEORGE E. ALLEN, BYRON A. CAIN, WILLIAM J. FROE-LIK, MARGARET T. SINEK; the Unknown Spouses and Assigns of Said Persons; and If Any of Said Persons Be Deceased, the Unknown Heirs, Executors, Administrators, Devisees, Legatees, Trustees and Creditors of Any Such Decedents, *Appellants.*

(331 P. 2d 590)

Opinion filed November 8, 1958.

*A. D. Weiskirch,* of Wichita, argued the cause, and *Manford Holly,* of Wichita, was with him on the briefs for the appellants.

*Roy C. Davis,* of Hutchinson, argued the cause, and *Frank S. Hodge, Eugene A. White, Robert Y. Jones,* and *H. Newlin Reynolds,* all of Hutchinson, were with him on the brief for the appellee.

The opinion of the court was delivered by

JACKSON, J.: Plaintiff, the owner of a certain described quarter section of land in Kingman County brought this action to cancel an oil and gas lease granted to defendant Coppinger and to quiet title against Coppinger and the other defendants. Plaintiff would, as will hereinafter appear, except from the judgment a ten acre square around a producing gas well.

The lease involved was written on the usual 88 Producer's Form but had a special typewritten covenant written into the contract. This paragraph read as follows:

"If a well is not commenced on the above described land within 120 days after November 6, 1955, this lease shall become null and void. Lessee agrees that said well when so commenced shall be drilled to a depth sufficient to test the Viola Limestone formation, unless oil and gas, or either of them, in paying quantities or granite, be encountered at a lesser depth. It is further agreed that in event the first test well on the above described lands shall be completed as a commercial producer of oil and gas, or either of them, then unless lessee

commences or causes to be commenced the drilling of a second well for oil and gas purposes on said premises within six months from and after the completion of the first test well, this lease shall cease and end insofar as all of the acreage except as to ten acres in square form around said producing well, and lessee agrees to forthwith release and surrender all of said leased premises with the exception of said ten acre tract."

It was further alleged that a gas well had been drilled on the land within the primary term of the lease; that on January 31, 1957, no second well having been commenced within six months as required by the special covenant set out above, plaintiff made written demand and request for the release of the oil and gas lease (except ten acres), pursuant to G. S. 1949, 55-201 and 55-202. This suit was filed March 25, 1957, after the demand for release had been ignored.

The issues between the parties can be sharply drawn by quoting a few paragraphs from the answer of the defendants. After admitting the lease, the drilling of the well, and that no other well had been commenced, defendants' answer continued:

"III.

"Further answering, defendants, and each of them affirmatively inform the court that prior to March 12, 1956, a test well was completed on the land in question which was and is a commercial producer of gas and gas only. That said gas well was drilled and equipped at a cost of $42,432.90, and since the completion of said gas well it has returned to the working interests collectively, defendants herein, gas runs in the total sum of $15,741.02. That there are gas producing areas within the state of Kansas where the production is not regulated between pools or wells by the Conservation Division of the Kansas Corporation Commission as provided by Article 7 of Statute 55-702, G. S. 1949, Supplement 1953, (sic) which statute empowers the commission to exercise its jurisdiction whenever the commission finds and determines that the orderly development of and production of natural gas from any common source of supply requires the exercise of its jurisdiction. That the well above referred to falls within the above category; that there are areas being developed without well spacing rules and without regulation of gas production between pools and wells, other than those terms and conditions contained in the contracts between the individual operators and the gas purchaser or purchasers, and the above well is so located and defendants are in said category. That taking into consideration the location of the gas well in question, the custom followed in the area concerned, the Kansas Corporation Commission will, following its orderly procedure, within a reasonable time, exercise its jurisdiction with respect to well spacing and pro-ration of gas production from the gas field wherein the well is situated and protect correlative rights and prevent economic waste, and will establish temporary well spacing, well testing, and pro-ration rules and will provide that not more than one gas well will be drilled and equipped on less than 160 acre spacing and will regulate the instant well accordingly.

"IV.

"By reason of the above and foregoing the lease involved herein has been fully developed as far as gas is concerned, and the defendants should not, in equity, be required to drill additional gas wells for the reasons that in so drilling they cannot abide by the custom existent in the area affected and the customary orders of the Corporation Commission as to well spacing, and since additional wells would be neither profitable to the lessor nor the lessee defendants equity should protect the lessees, irrespective of the terms of the lease, and should absolve them of the necessity of drilling additional gas wells on the lease to their detriment and cost, and to no advantage to the plaintiff. ·

"V.

"Further answering, the defendants affirmatively allege and inform the court that if the lease is cancelled as to all of the acreage, except as to ten acres in square form around the producing gas well, then and in that event, as far as the gas rights of the defendants are concerned, it would be a taking of the defendants' property and rights in property without due process of law and a deprivation to the defendants of a 15/16ths of their rights in, to and under the lease in question after they have expended $42,432.90 in the drilling and equipping of the gas well in question which now returns a benefit to both the lessor and lessees, in the maximum amount that can be returned under the probable rules and regulations of the Corporation Commission and the custom of drilling and developing existent in the area where the gas well in question is located.

"VI.

"Further answering, the defendants affirmatively allege and inform the court that they have offered to the plaintiff a release of all property described in the lease in question, as far as oil rights are concerned, but have demanded a retention of all gas rights in all of the area affected by the entire lease upon the premise that the terms of the lease have been fully complied with and there has been complete development as far as the gas covenants in the lease are concerned, and plaintiff has refused to accept said release and surrender.

"VII.

"Further answering, the defendants affirmatively allege and inform the court that if the lease in question is a divisible one then and in that event there should be no cancellation whatsoever as to the rights acquired by the defendants, lessees, insofar as gas is concerned; that if, in the alternative, the court determines that the lease in question is entire then and in that event before a cancellation of the lease is ordered as to all of the lease, except ten acres in square form around the producing gas well, then and in that event the defendants should, in equity, be given an opportunity to further develop for oil purposes rather than to invoke the harsh rule of a forfeiture of the remaining 150 acres entailed in the lease."

The above quoted paragraphs present the issues between the parties. Plaintiff filed a motion for judgment on the pleadings

which, after full consideration and written memorandum, was sustained by the trial court.

Defendants in appealing from the judgment argue in their brief that there was a mutual mistake of fact, that the contract was divisible as to oil and as to gas, and that they should have been allowed to introduce evidence under their answer.

There would seem little reason to belabor these questions. It would appear rather conclusively that the special, typewritten paragraph of the lease between the parties was clear and unambiguous as to its terms. It may be noted from the quoted parts of the answer *supra* that defendants pleaded no mistake, mutual or otherwise. Certainly, it is to be assumed they knew full well of the jurisdiction of the Corporation Commission in the regulation of the production of natural gas at the time the lease was drawn. Be that as it may, the courts cannot and should not remake contracts for the parties. In the case of *In re Estate of Hill,* 162 Kan. 385, 176 P. 2d 515, this court held:

"A primary rule for the construction of contracts is that, if possible, the court must ascertain and give effect to the mutual intention of the parties as of the time the contract was made, unless in contravention of legal principles, statutes or public policy."

The trial court in its memorandum relied upon *Kahm v. Arkansas River Gas Co.,* 122 Kan. 786, 253 Pac. 563, where the third paragraph of the syllabus reads as follows:

"A court of equity has no power to extend a gas and oil lease beyond the term specified in the written contract of the parties, nor are the lessors required to content themselves with damages neither pleaded nor tendered, in lieu of their right to a judgment ordering that the lease be canceled and the lessors' title quieted."

See also *G. S. Johnson Co. v. N. Sauer Milling Co.,* 148 Kan. 861, 84 P. 2d 934, 132 A. L. R. Anno. 707.

It has long been the rule that provisions specially written into a printed form are to be given particular attention and weight (*Hickey v. Dirks,* 156 Kan. 326, 133 P. 2d 107).

The rights of the parties being entirely governed by a clear, written contract and all the relevant facts being admitted, there was no need for the trial court to receive evidence in this case. Other matters argued have been carefully considered, but this opinion need not be extended further.

The judgment of the trial court is hereby affirmed.