No. 59,567

Wood River Pipeline Company, *Appellant,* v. Willbros Energy Services Company, *Appellee.*

(738 P.2d 866)

Opinion filed June 12, 1987.

*Mikel L. Stout,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and *Jerry G. Elliott* and *Terry C. Cupps,* of the same firm, were with him on the brief for appellant.

*Steven D. Gough,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause and *Forrest James Robinson, Jr.,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

Herd, J.: This case requires construction and interpretation of a written contract. The plaintiff/appellant, Wood River Pipeline Company (Wood River), appeals from the district court's grant of

summary judgment in favor of the defendant/appellee, Willbros Energy Services Company (Willbros).

On July 27, 1980, Wood River and Willbros entered into a contract in which Willbros agreed to build 109.5 miles of 24-inch pipeline from Bethany, Missouri, to Mason City, Iowa. The contract expressly provided the pipeline was to be built in a right-of-way easement owned by Williams Pipeline Company. Further, the pipeline was to be built approximately 10 feet from and generally parallel to the Williams pipelines located in the same easement.

The contract was typewritten with the exception of paragraph 2.03 of section 3, which was handwritten and inserted by the parties on the date the contract was executed. The clause, which is the subject of this litigation, provides:

"2.03 All settlements by company [Wood River] of claims in the name of contractor [Willbros] shall be based on substantial evidence of contractor's liability that the claims are valid and are reasonable in amounts.

"Contractor shall not be liable under any circumstances or responsible to company for consequential loss or damages of any kind whatsoever including but not limited to loss of use, loss of product, loss of revenue or profit. RW 7/27/80
GB 7/27/80"

On January 20, 1982, the pipeline built by Willbros for Wood River ruptured at a point southeast of Des Moines, Iowa. Wood River filed a three-count petition on September 29, 1983, seeking over $1 million in damages resulting from the rupture of the pipeline and alleging the rupture was caused by the negligence, breach of implied warranties, breach of express warranties, and breach of contract by Willbros. In count III of its petition, Wood River sought damages to real property at the site of the oil spill, the costs of replacing oil lost in the spill, the costs of repairing the pipeline, and the costs of recovering oil spilled.

Approximately one and a half years after Wood River brought suit, Willbros filed a motion for partial summary judgment, claiming that Wood River's claims for damages contained in count III of the petition, except its claim for the cost of repairing the pipeline, were precluded by paragraph 2.03 of section 3 of the contract.

On October 9, 1985, the district court granted partial summary

judgment and held that paragraph 2.03 of section 3 of the contract is clear and unambiguous and bars liability on the part of Willbros for consequential damages resulting from the pipeline rupture. The parties later settled their differences regarding count I and count II, and the cost of repairing the pipeline set forth in count III of Wood River's petition. To reflect this settlement, a journal entry of dismissal with prejudice was filed on April 18, 1986. Thus, Wood River appeals only from the journal entry of partial summary judgment entered on October 9, 1985.

The first issue on appeal is whether the trial court properly determined the contract was clear and unambiguous and that Wood River's claims for consequential damages were thus barred as a matter of law.

We recently restated the "fundamental legal concepts" to be applied where the rights of parties relative to the terms of a written agreement are in controversy:

"The doctrine has been well established and frequently applied that where parties have carried on negotiations, and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations, the written agreement constitutes the contract between them and determines their rights. [Citations omitted.] The interpretation of a written contract which is free from ambiguity is a judicial function and does not require oral testimony to determine its meaning. [Citations omitted.] Ambiguity in a written instrument does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. [Citation omitted.] If a written contract is actually ambiguous concerning a specific matter in the agreement, facts and circumstances existing prior to and contemporaneously with its execution are competent to clarify the intent and purpose of the contract in that regard but not for the purpose of varying and nullifying its clear and positive provisions." *Hall v. Mullen,* 234 Kan. 1031, 1037, 678 P.2d 169 (1984).

Thus, we must first apply the pertinent rules of interpretation to determine whether the contract in question is free from ambiguity. If we hold the contract is ambiguous, then we can consider extrinsic evidence to determine its meaning.

In the instant case, both parties argue the contract is unambiguous. However, they place conflicting interpretations upon paragraph 2.03 of section 3 of the contract. Thus, our interpretation of this provision is the crux of this case.

Paragraph 2.0 of section 3 is of particular importance and is quoted in full here:

"2.01 Contractor shall defend, protect, indemnify and save Company harmless from and against all claims, demands and causes of action of every kind and character arising in favor of any person, including Contractor, Company's employees, Contractor's employees, or other persons, on account of personal injuries or death or damage to property in anywise incident to or arising out of the work performed by Contractor hereunder (except normal damages to growing crops and timber on Company's right-of-way, incident to laying or taking up a pipeline, lia-

[Paragraph 2.03 is inserted, handwritten, at this point in the original contract.]

bility does not arise out of the Company's sole negligence. Contractor further agrees to pay Company for damages to its property and to indemnify and hold Company harmless against the payment of any and all taxes, penalties, interest, liens or indebtedness or claims against its property, or for work performed, or measured by the work performed, growing out of or incident to Contractor's operations hereunder.

"2.02 With respect to all claims for damage to property of every kind, Company may settle any claim at any time or may turn any claim over to Contractor for disposition as follows:

"1. Company may settle any claims in the name of Contractor which, in Company's opinion, are valid and reasonable; all other claims shall be turned over to Contractor for disposition under the terms of Subparagraph (2) below.

"2. If, within 20 days after any claim has been turned over by Company to Contractor for disposition, settlement has not been made or litigation has not been commenced, Company may notify Contractor that Company believes that the failure to settle such claim will harm its relations with the claimants, or others; if, within 10 days after such notice, settlement has not been made or litigation has not been commenced, Company may settle such claim.

"3. If such settlement is made by Company, Company will charge to Contractor the amount of such settlement and expenses, including attorney's fees, which have been incurred by Company; Company may at any time, deduct the amount of such settlement and expenses from any sums due Contractor under the Contract Documents or, upon Company's written demand, Contractor shall immediately reimburse Company in full for such amounts which Company has incurred, and such expenses which Company has incurred in connection with such settlement.

"4. If any claims are not settled by Company or by Contractor, at Contractor's own expense, Company may, at any time, hold back from sums due to Contractor under the Contract Documents amounts sufficient, in the judgment of Company, to cover payment of court judgments in connection with such claims together with all court costs, attorney's fee and any other items of cost which might be incurred by Company in connection therewith.

"a. All injuries to persons including fatal injuries and death.

"b. All damages caused as a result of fences, gates, and gaps left open or insecurely closed in connection with the Work including all damages to or damages caused by livestock and claims and demands with respect thereto.

"c. All damages done to all roads, railroads, and bridges or any other such structures.

"d. All damages claimed to have arisen out of Contractor's disposition of, or failure to dispose of, rock disturbed by Contractor's performance of the Work.

"e. All other damages to property, including ways of ingress and egress and claims and demands with respect thereto except necessary and unavoidable damages to crops, timber, land and improvements with the confines of the construction right-of-way furnished by Company; provided however, that Contractor shall be liable for all damages to lands lying within or without the construction right-of-way which are claimed to have arisen out of Contractor's disposition of (or failure to dispose of) any rock, trees or brush disturbed in Contractor's performance of the Work.
"This paragraph 2.0 shall apply to and be construed to include, but is not limited to, injuries or damages occasioned by failure of or use or misuse of any and all kinds of equipment, whether owned or rented by Contractor or furnished by any subcontractor.

"2.03 All settlements by company of claims in the name of contractor shall be based on substantial evidence of contractor's liability that the claims are valid and are reasonable in amounts.
"Contractor shall not be liable under any circumstances or responsible to company for consequential loss or damages of any kind whatsoever including but not limited to loss of use, loss of product, loss of revenue or profit. RW 7/27/80
GB 7/27/80"

The handwritten addition (2.03) was initialed and dated by both Roger Williams (Wood River's president) and Gary Bracken (Willbros' vice president).

Wood River contends section 2.03 places two restrictions upon Wood River's right to settle third-party claims on behalf of Willbros. First, it claims all settlements of third-party claims made by Wood River on behalf of Willbros must be based upon substantial evidence of Willbros' liability and must be valid and reasonable in amount. Second, it claims it is precluded from settling, on behalf of Willbros, third-party claims involving "consequential loss or damages of any kind." Wood River thus

believes paragraph 2.03 applies only to damage claims made by third parties and does not preclude Willbros' liability for claims made by Wood River on its own behalf for damages occurring from the pipeline rupture.

Wood River bases its argument primarily upon the enumeration and structure of paragraph 2.03. Wood River argues the first sentence of 2.03 qualifies the exculpatory language found in the second sentence of the paragraph. Thus, according to Wood River, the phrase in the second sentence providing Willbros shall not be liable to Wood River for consequential loss or damages of any kind applies only to settlement of third-party claims. Further, Wood River argues the parties purposely numbered the paragraph in question as 2.03 so it would follow paragraph 2.02, which does not discuss damage claims by Wood River against Willbros and specifically deals with third-party right-of-way claims.

Willbros, on the other hand, argues the second sentence of paragraph 2.03 means exactly what it says—that Willbros cannot be held responsible to Wood River for consequential loss or damages of any kind whatsoever. Willbros contends that under the agreement it clearly remains liable for *actual* damages—*e.g.*, the cost of labor and materials to repair a ruptured pipeline—but it is excluded from liability to Wood River for *consequential* damages.

Willbros contends Wood River improperly refers to the "first and second sentences" of paragraph 2.03 because 2.03 actually consists of two distinct subparagraphs. Willbros reasons the first handwritten subparagraph of 2.03 clearly modifies paragraph 2.02 while the second handwritten subparagraph of 2.03 modifies 2.01. Willbros notes that in paragraph 2.01, Willbros agrees to pay Wood River for damages to Wood River's property. Thus, Willbros reasons the second subparagraph in 2.03, which provides Willbros is not liable to Wood River for consequential damages, is a specific modification of the general statement in 2.01. Further, Willbros argues the first paragraph of 2.03 clearly refers to the settlement procedure for third-party claims discussed in 2.02, and thus was intended as a modification of 2.02.

The district court held the contract was clear and unambiguous and that 2.03 precludes Willbros' liability to Wood River for

consequential damages resulting from the pipeline's rupture. The court, in granting partial summary judgment, reasoned the contract plainly and inclusively states that the contractor (Willbros) shall not be liable under any circumstances. The court further reasoned the term "consequential damages" is a term which typically applies to the type of damages obtained from breach of contract and not damages arising out of tort activity. Finally, the court noted these clauses (2.01 through 2.03) were bargained for by two large and sophisticated companies, each acting through experienced persons.

In determining whether the contract in question is ambiguous, we are not limited to reviewing the district court's conclusions. Rather, we have the same opportunity to consider and evaluate the evidence as did the district court. *Hall v. Mullen,* 234 Kan. at 1035. However, after examining the document from its four corners, we conclude the contract is clear and unambiguous.

Several rules of construction with respect to written contracts are relevant to our analysis. First, words cannot be written into the agreement imparting an intent wholly unexpressed when it was executed. *Quenzer v. Quenzer,* 225 Kan. 83, 85, 587 P.2d 880 (1978). The intent of the parties and the meaning of a contract are to be determined from the plain, general, and common meaning of terms used. *Johnson v. Johnson,* 7 Kan. App. 2d 538, 542, 645 P.2d 911, *rev. denied* 231 Kan. 800 (1982). Second, in construing a written instrument, language used anywhere in the instrument should be considered and construed in harmony with all provisions and not in isolation. *Kennedy v. Classic Designs, Inc.,* 239 Kan. 540, 722 P.2d 504 (1986). Further, doubtful language in a contract is construed most strongly against the party preparing the instrument or employing the words concerning which doubt arises. *First National Bank of Lawrence v. Methodist Home for the Aged,* 181 Kan. 100, 104, 309 P.2d 389 (1957). And finally, if a handwritten provision conflicts with a typewritten or printed provision, the handwritten provision controls. *Desbien v. Penokee Farmers Union Cooperative Association,* 220 Kan. 358, 363, 552 P.2d 917 (1976); *Hanscome v. Coppinger,* 183 Kan. 623, 626, 331 P.2d 590 (1958).

With these rules in mind, we turn to the contract between Wood River and Willbros. First, an examination of the

handwritten addition to the contract clearly reveals the drafters intended paragraph 2.03 be separated into two distinct subparagraphs. Further, the second handwritten sentence of 2.03, when given its plain and ordinary meaning, clearly limits Willbros' liability to Wood River for consequential damages. This handwritten provision controls and modifies the printed provision in 2.01 whereby Willbros agrees to pay Wood River for damages to Wood River's property.

The principle that doubtful language in a contract is construed against the drafter is of little consequence here because of the particular circumstances of this case. While the entire printed contract was prepared by Wood River, the particular paragraph in question (2.03) was drafted by Willbros. Moreover, both parties agreed prior to execution of the contract to write the provision into the contract and initial the modification. Further, Wood River was aware, sometime prior to the execution of the contract, that Willbros wanted the information contained in 2.03 to be added to the contract. Finally, as noted by the trial court, these clauses were bargained for by two large and sophisticated companies of equal bargaining power, each acting through experienced persons. Under such circumstances, the fact that the provision in question was drafted by Willbros is of no particular consequence and the language should not necessarily be construed against Willbros.

For the reasons given, we hold the contract precludes Willbros' liability to Wood River for consequential loss or damages resulting from the rupture of the pipeline.

The judgment of the trial court is affirmed.