G.N. RUPE and William P.
Higgins, Plaintiffs,

v.

TRITON OIL & GAS CORPORATION,
Defendant.

Civ. A. No. 90–1159–B.

United States District Court,
D. Kansas.

Nov. 12, 1992.

**1496**

David W. Nickel, Depew, Gillen & Rathbun, Wichita, Kan., for plaintiffs.

Donald W. Bostwick, Adams, Jones, Robinson & Malone, Wichita, Kan., Jim L. Flegle, Harold A. Rose, Michael L. Dinnin, Bracewell & Patterson, Dallas, Tex., for defendant.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter is before the court on defendant's motion for summary judgment (Doc.

72), and defendant's motion to strike (Doc. 89). This diversity action for breach of contract was filed in state court before removal to this court.

The dispute concerns several gas purchase contracts under which plaintiffs agreed to sell gas produced from their wells to defendant. The parties entered into the subject contracts between 1976 and 1979, and the contracts have been amended from time to time. All contracts but one have an initial term of 20 years.

Although the specific claims vary somewhat with respect to the particular wells and contracts, the following appear to be among the breaches alleged by plaintiffs: (1) defendant unilaterally changed the contract price agreed upon and has failed to pay plaintiffs the correct contract price; (2) defendant failed to make an upward adjustment in the purchase price for gas that has a heating content higher than 1000 Btu; (3) defendant failed to reimburse plaintiffs for 75% of the Kansas severance tax paid by plaintiffs on several wells; (4) defendant wrongfully deducted from its purchase price a dehydration charge to which plaintiff did not agree; and (5) defendant failed to take and pay for quantities of gas specified in certain of the gas purchase contracts.

## I. *Defendant's Summary Judgment Motion*

Defendant raises several grounds in support of its motion for summary judgment.

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991).

### A. Material Facts

Plaintiffs allege that defendant breached the several contracts by implementing certain unilateral changes in their terms. Defendant announced the first of these changes on or about January 25, 1985 in a "letter amendment" sent to plaintiffs ("the 1985 Amendment"). The letter represents that the price paid for gas under the gas purchase contracts had been deregulated under the Natural Gas Policy Act of 1978 ("NGPA"). The letter "offers to continue to purchase gas from [plaintiffs'] wells under ... terms." (Defendant's Exh. 9 to Affidavit of Charles Winchester; Plaintiffs' Exh. 15).[1] These terms include a change in the price paid for gas from plaintiffs' wells, and an increase in the amount of a "dehydration fee" that defendant charges plaintiffs to dehydrate gas produced from their wells. The letter further proposes that both changes be effective January 1, 1985. The letter concludes: "If the aforementioned redetermination and processing fee increase is agreeable, please indicate your acceptance by signing in the space provided below and returning one (1) signed copy of this letter to the undersigned." *Id.* Plaintiffs did not sign and return a copy of the letter in the manner indicated. There is also evidence that plaintiffs promptly notified defendant that the terms of the offer were unacceptable to plaintiffs, and that plaintiffs continued to protest these terms before filing suit.

---

**1.** The parties have attached two different letters that differ only in the names of the contracts and wells covered thereunder. The court assumes that identical letters exist for the other subject wells.

(Plaintiffs' Exh. 17, Spicer Depo. at pp. 254–57; Exh. 9, Spicer Affidavit, at ¶¶ 9–13). Plaintiffs have continued, however, to accept payments by defendant in the amount, less the dehydration fee, proposed by defendant in the 1985 Amendment.

The second set of changes were announced by defendant in a "letter amendment" sent to plaintiffs on or about February 26, 1986 ("the 1986 Amendment"). Among other matters, this Amendment announced that effective January 1, 1986, defendant would no longer adjust its purchase price upward for gas having a heating value in excess of 1000 Btu, and that defendant would no longer reimburse plaintiffs for their payment of severance taxes.

### B. Statute of Limitations

Plaintiffs filed this action on February 20, 1990. All parties are in agreement that the five-year limitations period of K.S.A. § 60–511(1) applies to plaintiffs' claimed breaches of a written contract. *Brubaker v. Branine*, 237 Kan. 488, 493, 701 P.2d 929, 932 (1985); *Miller v. William A. Smith Constructing Co.*, 226 Kan. 172, 174, 603 P.2d 602, 604 (1979). The dispute concerns the time at which plaintiffs' cause, or causes, of action accrued.

■ In Kansas, a cause of action for breach of contract accrues at the time of the breach. *Voth v. Chrysler Motor Corp.*, 218 Kan. 644, 651, 545 P.2d 371 (1976); *Wolf v. Brungardt*, 215 Kan. 272, 279, 524 P.2d 726 (1974). The plaintiff's knowledge of the breach or any injury caused thereby is irrelevant. *Pizel v. Zuspann*, 247 Kan. 54, 74, 795 P.2d 42, *modified on other grounds*, 247 Kan. 699, 803 P.2d 205 (1990); *Freeto Constr. Co. v. American Hoist & Derrick Co.*, 203 Kan. 741, 746, 457 P.2d 1, 4 (1969); *Ware v. Christenberry*, 7 Kan.App.2d 1, 4, 637 P.2d 452 (1981).

Defendant argues that any breach arising from the 1985 Amendment[2] occurred on January 1, 1985—when the first set of changes would become effective; or at the latest on January 25, 1985 when it sent notice to plaintiffs of the change in terms. On the other hand, plaintiffs claim that they had a cause of action only at the time that defendant was obligated to pay for the gas. Plaintiffs further contend that a separate breach occurred on a month to month basis, and that they have a separate cause of action for each monthly breach committed by defendant.

■ The parties herein have entered into a continuing contractual relationship. For all gas received by the buyer in a given fiscal month, the buyer is obligated to pay the seller on approximately the 25th day of the following calendar month. (Plaintiffs' Exts. 1–6, section 2). Under Kansas law, a cause of action for breach of an obligation to make payments under a continuing contract generally accrues at the time each payment becomes due, thus giving rise to a separate cause of action for each failure to make payment when due. *See Head v. Knopp*, 225 Kan. 45, 47, 587 P.2d 867 (1978) (where contract of employment fixes time for payment, action accrues at the end of each period of payment); *Leonard v. Kleitz*, 155 Kan. 626, 627, 127 P.2d 421 (1942) (alimony); *see also FDIC v. Galloway*, 856 F.2d 112, 116 (10th Cir.1988) (new action on continuing guaranty accrues as each underlying debt becomes due); *Rock Milling & Elevator Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 98 Kan. 478, 483, 158 P. 859 (1916) (statute ran separately as to each separate shipment of cars); *Bailey v. Fredonia Gas Co.*, 82 Kan. 746, 109 P. 411 (1910) (single contract for drilling wells was severable as to each well, and payment was due whenever paying well had been drilled). If this rule is to apply, then plaintiffs have a separate cause of action accruing monthly, beginning February 25, 1985, for defendant's alleged breaches announced in the 1985 Amendment.

■ Breach of duties arising under a continuing contract may give rise, however, to a single action having a single date of

---

**2.** Defendant does not appear to challenge the timeliness of plaintiffs' claims arising from the 1986 Amendment.

accrual if the breach amounts to an anticipatory repudiation of the contract. *Trustees for Alaska Laborers–Constr. v. Ferrell*, 812 F.2d 512, 517 (9th Cir.1987) (citing 4 A. Corbin, *Corbin on Contracts* §§ 956, 951, 989 (1951)). In such a situation, the repudiation constitutes a total rather than partial breach, *see* Restatement (Second) of Contracts §§ 250, 253 (1981), giving the injured party one of several options:

> If an injured party wishes to treat a renunciation or repudiation of a contract as an anticipatory breach, he must either (1) bring an immediate suit for damages; or (2) treat the contract as still binding and bring an action only after the time for performance by the promisor has passed; or (3) rescind the contract and sue for money paid or the value of services or property furnished.

*Stauth v. Brown*, 241 Kan. 1, 734 P.2d 1063, syl. ¶ 8 (1987). Assuming, without deciding, that defendant's conduct constituted a repudiation of the continuing contract,[3] the issue becomes when a cause of action for an anticipatory breach of contract accrues.

There is authority for the proposition that a cause of action for an anticipatory breach accrues on the earliest date on which plaintiff is permitted to sue, *i.e.*, immediately upon the announcement of the breach by the repudiating party. *See American Cyanamid Co. v. Mississippi Chem. Corp.*, 817 F.2d 91, 93 (11th Cir. 1987) (New Jersey law). The general rule, however, is that "where an action is brought after the time fixed by an executory contract for the beginning of performance by a party who has committed an anticipatory breach, the period of limitations runs, not from the time of such breach, but from the time fixed by the contract for performance by the defaulting party." 51 Am.Jur.2d *Limitation of Actions* § 132 (1970). Case law indicates that Kansas adheres to the general rule.

In *In re Estate of Moe*, 240 Kan. 242, 729 P.2d 447 (1986), the court determined when a cause of action accrued for an anticipatory breach of an oral agreement to bequeath property in exchange for certain services. The evidence established that the decedent had promised the claimant certain farm property, in addition to $20 per week for housekeeping, if the claimant would care for the decedent and his farm until his death. The claimant provided such services for several years until the decedent sold the farm and moved into town. The claimant continued to provide housekeeping services to the decedent until his death. Claimant alleged that her claim to the farm accrued upon the death of the decedent, and not upon the sale of the farm.

The Kansas Supreme Court agreed. The court found it dispositive that the decedent had continued to accept performance by the claimant—even though the decedent had rendered his performance under the contract a legal impossibility when he sold the property. 240 Kan. at 248, 729 P.2d 447. Thus, the court distinguished the case from a similar oral contract in *Engelbrecht v. Herrington*, 101 Kan. 720, 172 P. 715 (1917), where the non-performing party had committed an anticipatory breach by selling the property, but the non-breaching party had fully performed his obligations under the contract. Instead, *Estate of Moe* followed the rationale of *Heery v. Reed*, 80 Kan. 380, 102 P. 846 (1909) and *In re Estate of Ray*, 180 Kan. 634, 306 P.2d 190 (1957), where the non-breaching parties had offered to perform or continued to perform, respectively, until the death of the decedents.

■ These cases make clear that in Kansas, if a cause of action for anticipatory breach of contract is brought after the time set for performance, the action accrues on the date that such performance was due—unless the breach rendered future performance a legal or factual impossibility *and* the non-breaching party has fully performed.

■ Applying this rule, it is clear that plaintiffs' cause of action accrued on the

---

**3.** It is doubtful that plaintiff could have treated defendant's actions as an anticipatory breach. *See Whiteley v. O'Dell*, 219 Kan. 314, 316, 548 P.2d 798 (1976) (in order to rescind, breach must be material and substantial); Restatement (Second) of Contracts § 243(4) (1981).

date when defendant's performance was due. Even if the court is to construe defendant's actions as a repudiation of contract, further *complete* performance by defendant remained both a legal and factual possibility. Thus, under the rule of *Heery v. Reed*, plaintiffs could continue to await full performance by defendant, in which case the action accrues only when performance is due. Moreover, even if defendant's future performance was not possible, plaintiffs' continued performance under the contract brings this repudiation under the rule of *In re Estate of Moe*.

Whether the court considers plaintiffs' action to be one for several breaches or a single breach of a continuing contract, the result is the same. Plaintiffs' cause of action for breach of contract accrued on the date when the first deficient payment was due: February 25, 1985. Because this action was filed on February 20, 1990, it is timely under the 5–year statute of limitations.

### C. Conditions Precedent

Plaintiffs claim damages for defendant's failure to take and pay for the contractual quantities of gas. Defendant denies plaintiffs' allegation, but as an affirmative defense contends that plaintiffs have failed to satisfy certain conditions precedent required under the contract. This defense requires an interpretation of the language of the contract.

 The interpretation of a gas purchase contract is subject to the same rules governing all contracts. Interpretation of an unambiguous contract is a judicial function that requires the court to ascertain the intent of the parties from the four corners of the written instruments. *Wood River Pipeline Co. v. Willbros Energy Servs. Co.*, 241 Kan. 580, 738 P.2d 866, syl. ¶ 1 (1987); *Short v. Wise*, 239 Kan. 171, 174, 718 P.2d 604 (1986); *Amoco Prod. Co. v. Kansas Power & Light Co.*, 505 F.Supp. 628, 632 (D.Kan.1980). If the language of the contract is clear, unambiguous, and can be carried out as written, the court must give effect to the contractual language without resort to rules of construction or

extrinsic evidence to determine the contract's meaning. *Godfrey v. Chandley*, 248 Kan. 975, 977–78, 811 P.2d 1248 (1991). Whether an ambiguity exists in a written instrument is a question of law for the court. *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.*, 243 Kan. 130, 133, 754 P.2d 803 (1988). "An ambiguity does not appear until two or more meanings can be construed from the contract provisions," *Albers v. Nelson*, 248 Kan. 575, 578, 809 P.2d 1194 (1991), and the contractual terms must be determined from their plain, general, and common meaning. *Wood River*, 241 Kan. at 586, 738 P.2d 866.

#### 1. *Deficient–Take Claims*

 Defendant relies first on section B–1(k) of Exhibit "B" of the contracts, which provides in relevant part:

Subject to the other provisions of this contract, at the termination of this agreement, if Buyer is deficient in gas volume takes as provided above, and Seller is capable of delivering said gas volumes to Buyer, Seller shall have the option to either (a) extend the contract for a period of time to deliver a volume of gas equal to the deficiency of gas volume takes, or (b) demand payment from Buyer for damages, as proven by Seller.

(Exts. 3 & 4 to Affidavit of Charles Winchester, Gas Purchase Contracts GK–05152 and GK–05153). According to defendant, this provision "clearly" states that plaintiffs' claims for any take deficiencies must occur upon termination of the contracts. Under this view, defendant could presumably take nothing from plaintiffs' wells for the duration of the 20–year term of the contracts, yet plaintiffs would have no claim against defendant until the termination of the contracts. Because none of the contracts at issue have been terminated, defendant argues that plaintiffs have failed to satisfy a condition precedent to a take-deficiency claim.

The court disagrees. The language of the cited provision does not frame "the termination of the contract" as a condition precedent for all deficient-take claims. Rather, it merely sets forth what remedies

are available to the Seller "at the termination of this agreement, if Buyer is deficient in gas volume takes as provided above, and Seller is capable of delivering said gas volumes to Buyers,...." In other words, the plain language of the provision prescribes remedies that are to apply in the event that deficiencies exist at the termination of the agreement. It is silent as to, and therefore does not restrict, the course of action available to the Seller if the Buyer becomes deficient in its gas takes before the termination of the contract.

### 2. *Drainage Claims*

■ Defendant also contends that plaintiffs' claimed damages for "lost volumes of gas" are claims for "drainage" damages caused by defendant—although damages for drainage appear nowhere in plaintiffs' complaint or in plaintiffs' response to interrogatories. Characterizing plaintiffs' claims to be for drainage, defendant then argues that plaintiffs have failed to satisfy the conditions precedent set forth in the drainage clause of the contracts.

Defendant does not provide the court with any clear guidance as to the relation between "deficient-take" and "drainage" claims. The court gleans from the parties' memoranda, however, that "drainage" refers to a decrease in the amount of gas produced from a given well that is caused by disproportionate production from wells on contiguous property drawing from the same reservoir. Apparently, defendant contends that any failure on its part to take the contractual quantities would be due to drainage from plaintiffs' wells. Defendant claims, however, that plaintiffs failed to avail themselves of the contractual remedy for drainage.

Defendant relies on section B–1(1), Exhibit B to Contract GK–05152, which provides:

> In the event *a party* should take gas from other acreage contiguous to Seller's acreage described on Exhibit "A", at a rate which causes Seller to suffer the

drainage of gas from its acreage, then, to the extent necessary to prevent such drainage, Seller shall have the right to sell gas to others subject to the continuing prior right of Buyer to purchase gas hereunder at a rate which would prevent such drainage. At such time, or times, as Seller suffers such drainage, *Seller shall notify Buyer in writing setting forth the volume of gas which Seller believes it is necessary to cause to be taken to prevent such drainage* and Buyer within thirty (30) days following receipt of such notice, shall notify Seller that Buyer will take gas at such rate or, declining to do so, Buyer shall release gas to Seller in such volumes as will permit Seller to sell the same to the other parties to the extent necessary to prevent such drainage.

(Exh. 3 to Affidavit of Charles Winchester) (emphases added). Because plaintiffs did not notify defendant in writing of their belief that drainage was occurring, defendant claims that plaintiffs have failed to satisfy a condition precedent to recovery for damages resulting from such drainage.

Plaintiffs contend that their deficient-take claims are unrelated to any gas drainage that defendant may have caused to plaintiffs' wells.[4] According to plaintiffs' expert, "[t]he concept of gas drainage *may be* completely independent of a contract quantity obligation under a gas purchase contract." (Dyk Affidavit at ¶ 14; Exh. 16 to Plaintiffs' Response; emphasis added).

The relevance of the "drainage clause" and plaintiffs' failure to invoke its remedy is dependent upon the existence of a factual relationship between plaintiffs' deficient-take claims and any drainage that defendant may have caused. Because the court is unable to determine the nature, if any, of this relationship in these summary judgment proceedings, the motion must be denied on these grounds alone.

■ Moreover, the language of the drainage clause differs in material respects

---

**4.** The contracts provide that defendant is to purchase each year a certain percentage of the gas reserves attributable to each well, (sections B–1(a) & (B), Exh. B of Gas Purchase Contracts

GK–05152 and GK–05153), ·and that in each common reservoir, gas shall be taken rateably from each producing well covered by the respective contract. (*Id.* section B–1(h)).

among the various contracts. Plaintiffs note that the drainage clause of Contract GK–05153, unlike Contract GK–05152, begins with the language:

> In the event a party *other than Buyer* should take gas from other acreage contiguous to Seller's acreage described on Exhibit "A", at a rate which causes Seller to suffer the drainage of gas from its acreage,.... [a]t *such* time, or times, as Seller suffers *such* drainage, Seller shall notify Buyer in writing....

(Section B–1(1), Exhibit B to Contract GK–05153; emphasis added). The clear language of this provision states that the only drainage for which the Seller is to give notice to the Buyer is drainage caused by parties other than the Buyer. If plaintiffs are indeed claiming that *defendant* caused drainage to plaintiffs' wells by taking disproportionately from other wells in the same reservoir, the drainage clause of Contract GK–05153 does not apply. Thus, at least as to the wells covered under Contract GK–05153, defendant's affirmative defense fails as a matter of law.

### D. Absence of Breach

Defendant argues that plaintiffs' claims for breach of contract fail as a matter of law. Defendant relies on section B–6(a)(2) of Exhibit B to the contracts, which provides:

> Buyer shall not be obligated to maintain connection with any well *when the volume deliverable therefrom under the conditions of this agreement is not economically feasible in Buyer's judgment,* such judgment shall be formulated in a prudent and non-capricious manner. If Buyer discontinues connection of formation or formations from any such well, *Buyer shall release the acreage attributed thereto from this contract.*

(emphasis added). Defendant argues that this provision grants defendant the right to make unilateral changes in the contract terms if such changes are deemed necessary by defendant to remain economically competitive. Defendant claims that production from plaintiffs' wells was not economically feasible without implementing the changes announced in the 1985 and 1986 Amendments. Thus, according to defendant, it acted pursuant to its contractual rights by unilaterally changing the terms of the contract.

■ The right of one party to make unilateral changes in the terms of a contract is generally available only to those who expressly provide for this right in the agreement. *See Sharp Elecs. Corp. v. Lodgistix, Inc.,* 772 F.Supp. 540, 546 (D.Kan.1991); *see also Fast v. Kahan,* 206 Kan. 682, 684, 481 P.2d 958 (1971). This was recognized in *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.,* 243 Kan. 130, 754 P.2d 803 (1988), where the court determined the effect of a "market-out" provision in a gas purchase contract. In that case, the gas purchaser had unilaterally adjusted the price to be paid for gas under the contract when the purchaser determined that the current price was no longer economical. The court held that this unilateral action was unambiguously allowed under the terms of a market-out clause, which provided:

> In the event Buyer finds the *price* of gas sold under this contract to be uneconomical and unacceptable, then Buyer shall propose to Seller a lesser and acceptable price level. Seller shall have a period of thirty (30) days following said notice to either accept or reject Buyer's offer. If Seller rejects Buyer's offer, then Buyer shall release Seller's gas from the terms of this contract.

*Anadarko,* 243 Kan. at 135, 754 P.2d 803 (emphasis added).

■ The contractual provision upon which defendant relies is not comparable to that in *Anadarko.* First, section B–6(a)(2) makes no reference to a right to change any term of a contract that continues in existence. It provides only that defendant may terminate the contractual relationship if a certain condition is met.

Second, contrary to defendant's rewording of the contract, the condition upon which defendant may exercise its judgment to terminate the contract is not "economic infeasibility under the current contractual price and market conditions." Rather, defendant may exercise its discretion to dis-

connect from plaintiffs' wells *"when the volume deliverable* [from plaintiffs' wells] under the conditions of [the] agreement is not economically feasible...." (emphasis added).

The court finds that this provision is free of ambiguity. If the *volume of gas deliverable* from plaintiffs' wells is such that it is not economically feasible for defendant to continue production under the conditions of the agreement, defendant may exercise its prudent and non-capricious judgment to discontinue its connection with plaintiffs' wells. Defendant does not contend that the volume deliverable from plaintiffs' wells rendered further production from plaintiffs' wells economically infeasible.[5] To the contrary, defendant admits that it implemented the changes announced in the 1985 and 1986 letter Amendments for reasons of market conditions. As a matter of law, the provision cannot be construed to authorize the unilateral changes made by defendant.

Thus, the court will deny summary judgment on these grounds.

### E. Waiver, Estoppel, and Laches

Defendant raises the affirmative defenses of waiver, estoppel, and laches. Defendant alleges that plaintiffs have accepted payment from defendant under defendant's terms; that plaintiffs never protested the changes implemented under the 1985 and 1986 Amendments; and that defendant "relied" upon plaintiffs' failure to protest the changes.

The nature of the defenses of estoppel, waiver, and laches are set forth in *Schraft v. Leis,* 236 Kan. 28, 686 P.2d 865 (1984):

Estoppel involves an assertion of rights inconsistent with past conduct, silence by those who ought to speak, or situations where it would be unconscionable to permit persons to maintain a position inconsistent with one in which they have already acquiesced.

Waiver implies a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some

positive act or positive inaction which is inconsistent with the contractual right. Waiver is consensual in nature but the intent may be inferred from conduct and the knowledge may be actual or constructive.

The doctrine of laches is an equitable device designed to bar stale claims where an excessive amount of time has passed prior to the assertion of a claim. Delay, by itself, does not constitute laches and an action generally will not be defeated by laches alone unless some prejudice has resulted therefrom to the rights or interests of the adverse party.

236 Kan. at 36–37, 686 P.2d 865.

■ The court finds no basis for asserting any of these defenses. As to the claims of estoppel and waiver, a seller under a gas purchase contract does not act inconsistent with his contractual rights simply by keeping payments that are less than his due under the contract. *See Holmes v. Kewanee Oil Co.,* 233 Kan. 544, 550–51, 664 P.2d 1335 (1983) (lessors who for many years kept royalty payments from producer were not barred by estoppel or waiver from claiming higher payments were due), *cert. denied,* 474 U.S. 953, 106 S.Ct. 322, 88 L.Ed.2d 305 (1985). As to the claim of laches, defendant does not allege how it has been prejudiced other than to claim without elaboration that it "relied" on plaintiffs' silence. In any event, plaintiffs have presented evidence that they did protest defendant's action.

Accordingly, plaintiffs are not barred from recovery by either waiver, estoppel, or laches.

### F. Unjust Enrichment

■ Plaintiffs seek relief under a claim of unjust enrichment for defendants' charge of a dehydration fee. Plaintiffs agreed to pay this dehydration fee under a letter amendment dated October 30, 1980. Plaintiffs contend, however, that they agreed to this amendment only upon defendant's oral assurances that the fee would

---

**5.** Plaintiffs have presented evidence that their wells have been quite capable of delivering sufficient volumes of gas to be economically feasible.

be eliminated once defendant had recovered its capital cost invested in the dehydrators. Plaintiffs claim that defendant—by selling the more profitable dehydrated gas to its customers—is retaining the benefits of dehydration that plaintiffs have and continue to pay for.

"[T]he substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to him." *Short v. Wise*, 239 Kan. 171, 177, 718 P.2d 604, 608 (1986). Defendant argues that plaintiffs may not recover under the quasi-contractual theory of unjust enrichment because the theory is available only when no express contract exists. Under the 1980 Amendment, plaintiffs expressly agreed to pay the dehydration fee.

Plaintiffs do not respond to this argument.[6] The court will therefore grant summary judgment as to plaintiffs' claim of unjust enrichment.

## II. *Defendant's Motion to Strike* (Doc. 89)

▆ Defendant moves to strike from the pretrial order plaintiffs' submission of a "new" mixed question of fact and law. At the pretrial conference, plaintiffs proposed the following question to be determined in this action: "Did the defendant perform under the gas purchase contracts in good faith as required by K.S.A. 84–1–203?" Defendant objects to inclusion of this claim, which according to defendant was not previously pled.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief, . . . ." The federal rules further provide that "[n]o technical forms of pleading or motions are required." Fed.R.Civ.P. 8(e)(1).

The alleged breach of the duty of good faith imposed by K.S.A. § 84–1–203 cannot be considered a new claim or theory to this action.

As a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, "provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits." The purpose of "fact pleading," as provided by Fed.R.Civ.P. 8(a)(2), is to give the defendant fair notice of the claims against him without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed and the parties have opportunity for discovery.

*Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir.1991). Plaintiffs have alleged throughout this case, beginning with the first pleading, that defendant has acted in bad faith in its performance under the contracts. (Petition, ¶¶ 10 & 12 at p. 7; ¶ 23 at p. 14). In turn, defendant has denied these allegations, (Answer, Doc. 11, ¶ 10 at p. 3), and alleged that it "has rendered good faith performance under the Contracts." (*Id.* ¶ 50 at p. 11). The recent inclusion of K.S.A. § 84–1–203 is nothing more than a new label for a claim that has always been part of this case. Nor has defendant made any showing of prejudice beyond its mere allegation of prejudice. The motion will be denied.

Accordingly, the court denies defendant's motion (Doc. 72) for summary judgment as to all claims except plaintiffs' claim for unjust enrichment, as to which the motion is granted. The court further denies defendant's motion to strike (Doc. 89). The court will defer ruling on plaintiffs' motion in limine until such time as the case is set for trial.

IT IS SO ORDERED.

---

**6.** Plaintiffs have not alleged that defendant fraudulently induced them to sign the 1980 Amendment by making misrepresentations. Nor has defendant invoked the prohibition on parole evidence to vary the terms of a written contract. *See, e.g., Jeschke v. United States*, 814 F.2d 568, 575 (10th Cir.1987).